UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:09CV-38-R

JAMES NOFFSINGER,
    PLAINTIFF,

v.

UNITED STATES OF AMERICA,
    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the Court on a bench trial conducted April 18, 2011. The Findings of Fact and Conclusions of Law are below. A separate judgment shall issue.

## FINDINGS OF FACT

### I. THE INCIDENT

1. Plaintiff, James Noffsinger, was on his boat with his father on July 27, 2006.

2. Plaintiff's boat was a 20-foot pontoon boat. On the day of the incident, the canopy of the boat was deployed.

3. At some time between 10:00 and 10:45 a.m., Plaintiff was heading south along the shoreline towards his home from Motley Bay.

4. While heading south, Plaintiff noticed a helicopter on a slow descent moving towards him.

5. Plaintiff noticed a single pilot in the helicopter, and a single horizontal rotor and a single vertical rotor. The color of the helicopter was a dark green. The pilot was wearing a white helmet.

6. Plaintiff slowed and stopped his boat as the helicopter continued to approach.

7. The helicopter passed directly over the Plaintiff's boat, at a height of less than 50 feet,

causing the canopy of the boat to collapse.

8. After the incident, Plaintiff observed the helicopter and it had a large white star on the side and white lettering.

9. Plaintiff was pinned under the collapsed canopy and claims injuries.

## II. GOVERNMENT'S LIABILITY

10. The government operates three army aviation division's out of Fort Campbell. These divisions are the 101st, the 159th, and the 160th.

11. On the date of the incident, the 101st had no aircraft airborne from Fort Campbell.

12. On the date of the incident, the 159th had no aircraft airborne from Fort Campbell.

13. On the date of the incident, the 160th had 6 aircraft airborne from Fort Campbell during the morning hours.

14. 5 of the 6 160th airborne aircraft were not in the Lake Barkley area.

15. The sixth aircraft was a Chinook.

16. A Chinook is a large aircraft with twin horizontal rotors and no vertical rotors.

17. There is a video of the control panel of the Chinook.

18. The video shows the Chinook in the Lake Barkley area, and in the vicinity of the incident, around 10:30 a.m.

19. The video shows the Chinook doing a rapid descent to an altitude of about 39 feet, around 10:30 a.m.

20. Plaintiff's description of the helicopter that flew over his boat is entirely inconsistent with the description of a Chinook.

21. The flight path described by Plaintiff, a slow descent with slow forward movement, is

inconsistent with the rapid descent of the Chinook shown in the video.

22. The Chinook was not involved in the incident with Plaintiff's boat.

23. No military helicopters that operates out of Fort Campbell had a white star or white lettering.

24. All pilots of military helicopters wear dark green helmets and have for years. No helicopter pilots from Fort Campbell wear white helmets.

25. The Court accepts Plaintiff's account that a helicopter caused damage to Plaintiff's boat and personal injury to him. However, other than being dark green, Plaintiff's description of the offending helicopter was not a military helicopter. Plaintiff described a pilot wearing a white helmet and a helicopter with a white star and white lettering. No military pilot at Fort Campbell wears a white helmet and no military helicopter at Fort Campbell has a white star or white lettering.

26. Plaintiff was not damaged by a U.S. Army Helicopter.

### III. Miscellaneous Findings

27. Mr. Holmes observed a low-flying helicopter in the area of Plaintiff's accident.

28. The aircraft observed by Mr. Holmes had a single vertical rotor and a single horizontal rotor.

29. The aircraft described by Mr. Holmes is inconsistent with a Chinook.

30. There is no evidence that the aircraft observed by Mr. Holmes was the same aircraft that passed over Plaintiff's boat.

### IV. SPOLIATION

31. Evidence that the Plaintiff requested, such as videos and radar strips, has been destroyed.

32. The destruction was a part of the normal business practices of the various agencies in possession of the evidence.

33. The destruction of the evidence was not intentional or reckless.

## CONCLUSIONS OF LAW

### I. SPOLIATION

An adverse inference can be drawn if evidence in a parties control is unavailable to the other party. *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). In the instant case, it is uncontested that Plaintiff requested certain evidence, such as radar strips and videos, that were within the control of the government but were destroyed prior to being turned over to Plaintiff.

A party seeking an adverse inference based on spoliation must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasoanble trier of fact could find that it would support that claim or defense." *Id.* Even assuming, *arguendo*, that the first and third prongs are met, Plaintiff has failed to demonstrate a culpable state of mind.

A culpable state of mind can result if a party destroys evidence that the party "should have known . . . may be relevant to future litigation," if the evidence is destroyed "knowingly, even if without intent to breach a duty to preserve it, or negligently." *Id.* In the instant case, while the government was on notice of some sort of claim as of the day of the accident,[1] they did

---

[1] An officer investigated the incident the evening of the accident and contacted the government as a part of his investigation.

not receive an informal complaint until months after the requested evidence was destroyed. Similarly, the government did not receive the formal complaint until almost a year after the evidence would have been destroyed. Accordingly, Plaintiff must rely on the initial report to establish the government destroyed the evidence with a culpable state of mind.

The initial information received by the government from the state officer does not give notice that the destroyed evidence should have been preserved. Plaintiff did not specifically request that such information be preserved through the officer. There is no indication that the identity of the helicopter would become a contested issue at a later date as of the time of the initial report. Additionally, in the instant case, all evidence destroyed was in the normal course of business. *McGinnity v. Metro-North Commuter R.R.*, 183 F.R.D. 58, 61 (D. Conn. 1998) (Not spoliation when evidence destroyed in normal course of business with limited notice). Accordingly, there is no culpable state of mind.

Finally, the evidence tends to indicate that any spoliation would not have been relevant to the Plaintiff's claim. The evidence showed that only one military helicopter was in the vicinity of the boat on the day of the incident. The video associated with that flight was recovered. Testimony established that the other evidence requested by Plaintiff, radar strips from various control towers, would have been of no help in identifying an aircraft flying in the manner that Plaintiff reported. For an aircraft to show up on the requested radar strips, the aircraft would have needed to be at a significantly higher altitude than reported by the Plaintiff.

For the foregoing reasons, this Court declines to draw an adverse inference against the Defendant due to the destruction of evidence later requested by the Plaintiff.

## II.     NEGLIGENCE

Plaintiff has filed a negligence claim against the United States. An essential element of proving negligence is proving that the Defendant was the cause of Plaintiff's injuries. *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009). This Court finds, as a factual matter, that the helicopter involved in the incident was not a United States Army Helicopter. Plaintiff has offered no alternative source for the helicopter within the government's control. Accordingly, Plaintiff has failed to demonstrate the required causation and the negligence action must fail.

## **CONCLUSION**

For the foregoing reasons, this Court finds in favor of DEFENDANT. A separate judgment will issue.

IT IS SO ORDERED.